Jennifer A. Golinveaux (SBN: 203056)
Winston & Strawn LLP
101 California Street, 35th Floor
San Francisco, CA 94111-5840
Telephone: (415) 591-1506
jgolinveaux@winston.com

Diana Hughes Leiden (SBN: 267606)
Winston & Strawn LLP
333 S. Grand Ave., 38th Floor
Los Angeles, CA 90071-1543
Telephone: (415) 591-1506
dhleiden@winston.com

Attorneys for Movant
ALTICE USA, INC. and
CSC HOLDINGS, LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re: Third Party Subpoena Issued to OPSEC ONLINE LLC<br><br>BMG RIGHTS MANAGEMENT (US) LLC; UMG RECORDINGS, INC.; CAPITOL RECORDS, LLC; CONCORD MUSIC GROUP, INC.; and CONCORD BICYCLE ASSETS, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>ALTICE USA, INC. and CSC HOLDINGS, LLC,<br><br>Defendants. | **Case No.**<br><br>**Related to No. 2:22-cv-00471-JRG in the United States District Court Eastern District of Texas Marshall Division**<br><br>**DECLARATION OF DIANA HUGHES LEIDEN IN SUPPORT OF MOTION TO COMPEL COMPLIANCE WITH THE SUBPOENA ISSUED TO OPSEC ONLINE LLC** |

1
DECLARATION OF DIANA HUGHES LEIDEN

I, Diana Hughes Leiden, declare as follows:

1. I am an attorney and member of the State Bar of California. I am an attorney at the law firm of Winston & Strawn LLP ("Winston & Strawn"), counsel of record for Movants Altice USA, Inc. and CSC Holdings, LLC (collectively, "Altice"). I have personal knowledge of the facts set forth herein and, if called to testify, could and would competently testify thereto.

2. I submit this declaration in support of Altice's Motion to Compel Compliance with the Subpoena Issued to OpSec Online LLC ("OpSec").

3. Plaintiffs UMG Recordings, Inc., Capitol Records, LLC, Concord Music Group, Inc., and Concord Bicycle Assets, LLC have identified OpSec as a third party with information relevant to the Underlying Litigation in their Supplemental Initial Disclosures, individually served on April 28, 2023. Attached hereto as **Exhibit A** are true and correct copies of Plaintiffs' Supplemental Initial Disclosures.

4. Attached hereto as **Exhibit B** is a true and correct excerpt of the Subpoena *Duces Tecum* served on OpSec by Altice on June 29, 2023 (which excludes a lengthy exhibit listing all of Plaintiffs' works-in-suit).

5. Attached hereto as **Exhibit C** is a true and correct copy of OpSec's Objections and Responses to Altice's Subpoena *Duces Tecum*, served on August 2, 2023.

6. On August 1, 2023, while Altice's subpoena was pending, counsel for Plaintiffs sent my colleague, Michael Elkin, a letter stating that Plaintiffs would not rely on OpSec evidence to prove direct infringement of the works-in-suit, in order to "streamline the case." Attached hereto as **Exhibit D** is a true and correct copy of that correspondence.

7. On August 9, 2023, my colleague Krishnan Padmanabhan wrote a letter to counsel for OpSec requesting a meet and confer regarding OpSec's objections and responses to Altice's subpoena. Attached hereto as **Exhibit E** is a true and correct copy of that correspondence.

8. On August 15, 2023, I participated in a meet and confer with counsel for OpSec, Timothy Reynolds, relating to its objections to Altice's subpoena. Thereafter, Mr. Reynolds and I had several other discussions and exchanged correspondence via email regarding potential compromises that could be reached on the scope of Altice's subpoena in light of Plaintiffs' representation that they would not rely on OpSec evidence for purposes of proving direct infringement in the Underlying Litigation.

9. Relying on Plaintiffs' representation in the Underlying Litigation, Altice agreed to narrow the scope of the requests to the claims period of the litigation as opposed to the time period encompassing when OpSec initiated its relationship with Plaintiffs. Altice also agreed to accept summary reports as opposed to a more complete set of evidence relating to OpSec's alleged detection of infringement of Plaintiffs' works on its network. Further, Altice did not insist that OpSec produce detailed documentation regarding the reliability and accuracy of OpSec's system, such as documents concerning false positive results from the OpSec System, operational audits of the OpSec System, and documents and communications pertaining to any technical assessments of the OpSec System, or the bugs, flaws, weaknesses, or potential improvements to the OpSec System, and any proposed and/or implemented path or remediation of any such bugs, flaws, or weaknesses.

10. In response to Altice's proposals, OpSec initially agreed to produce documents responsive to certain requests regarding (i) the reliability of OpSec's and Audible Magic's services and data underlying the verification and notice-sending process, as well as (ii) documents relating to OpSec's services and relationship with Plaintiffs and the RIAA.

11. On September 20, 2023, Plaintiffs reversed course and withdrew their prior, unequivocal representation—stating that "Plaintiffs will use any and all such information, and rely on OpSec evidence, in any way they see fit, including in connection with proving direct infringement." Attached hereto as **Exhibit F** is a true and correct copy of that correspondence. Altice subsequently filed a motion in the

Underlying Litigation to hold Plaintiffs to their initial representation and preclude them from relying on OpSec notice data to prove direct infringement, which has not yet been heard by Judge Gilstrap.

12. I subsequently informed Mr. Reynolds, that, as a result of Plaintiffs' changed position, Altice would have to insist on OpSec's production of documents in response to the subpoena as originally drafted. In an attempt to reduce the burden on OpSec, I informed Mr. Reynolds that Altice offered to accept documents from OpSec in two tranches—one set of the documents that OpSec had originally agreed to produce and a source code review, followed by a second set of documents (including the more detailed notice data) that Altice had been willing to forego when Plaintiffs were committed not to use OpSec data in order to prove direct infringement. I confirmed that if Altice's preclusion motion was granted by the Underlying Court, Altice could likely forego the second set of documents. OpSec rejected that compromise and has refused to produce a single document or permit a routine source code review.

13. Despite Altice informing OpSec of Plaintiffs' change of position and explaining why it is now necessary to pursue its subpoena as drafted, OpSec continues to object to producing any documents to Altice—parroting Plaintiffs' position that Altice is to "blame" for Plaintiffs' about-face for continuing to seek limited categories of OpSec evidence after Plaintiffs represented that they would not rely on OpSec evidence to establish direct infringement. For example, on November 13, Mr. Reynolds justified OpSec's refusal to produce documents by claiming that "because Defendants insisted on production of OpSec's source code, infringement data, and other information for use in their defense, Plaintiffs have said that they will also rely on such data, and Defendants are insisting on even broader discovery from OpSec."

14. The parties in the Underlying Litigation entered into a Stipulated Protective Order that governs the review of source code produced by both parties and third parties and that includes very strict measures to protect the confidentiality of any code that is made available. Altice provided the Protective Order to OpSec on August

15, 2023, and OpSec confirmed that it adequately addressed its concerns about confidentiality and the source code review process. Attached hereto as **Exhibit G** is a true and correct copy of the protective order entered into in the Underlying Litigation.

15. Other third parties in the Underlying Litigation, including Rightscorp, Inc. and Audible Magic Corporation, have already made their source code available for Altice's inspection pursuant to third-party subpoenas served by Altice and subject to the protections in the Stipulated Protective Order.

16. On December 19, 2023, I met and conferred with Mr. Reynolds again and informed him that Altice planned to file this instant Motion in California and sought OpSec's agreement to transfer the Motion to the Eastern District of Texas. Mr. Reynolds informed me that he would confer with OpSec as to whether it would stipulate to the transfer.

17. Attached hereto as **Exhibit H** is a true and correct copy of the public version of an Order granting Defendant Charter Communications, Inc.'s Motion to Compel Compliance with the Subpoena *Duces Tecum* served on OpSec in *Warner Bros. Records Inc., et al. v. Charter Commc'n, Inc.*, Case No. 1:19-cv-00874-RBJ-MEH, issued by the District of Colorado October 5, 2020.

18. Attached hereto as **Exhibit I** is a true and correct copy of an Order directing OpSec (f/k/a MarkMonitor, Inc.) representative Sam Bahun to appear in-person to testify regarding MarkMonitor's relationship with Plaintiffs in *UMG Recordings, Inc., et al. v. Bright House Networks, LLC*, Case No. 8:19-cv-710-MSS-TGW.

19. Attached hereto as **Exhibit J** is a true and correct copy of an Order granting Defendant Cox Communications, Inc.'s Motion to Compel in *Cox Commc'n, Inc. v. MarkMonitor, Inc.*, Case No. 19-mc-80050-SK, issued by the Northern District of California on March 7, 2019.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed December 20, 2023, at Los Angeles, California.

                                                */s/ Diana Hughes Leiden*
                                                Diana Hughes Leiden